IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

PUTNAM-GREENE FINANCIAL
CORPORATION,

     Plaintiff,

v.

AT&T CORP.,

     Defendant.

CIVIL ACTION FILE

NO. 3:19-cv-177-TCB

# **O R D E R**

## I.   **Background**

In this case, Plaintiff Putnam-Greene Financial Corporation has sued Defendant AT&T Corp. for alleged overpayments and service interruptions.

The parties entered into a service agreement in which AT&T agreed to provide Putnam-Greene with internet and network services. At issue in this action are Putnam-Greene's Accounts 465 and 545.

Putnam-Greene alleges that on August 23, 2017, it requested in writing that AT&T close old circuits associated with Account 465 but that AT&T failed to do so and negligently failed to stop billing that account for the use of the old circuits. It contends that it disputed the continued billing charges but that AT&T nonetheless temporarily terminated all services to Putnam-Greene until Putnam-Greene paid the outstanding balance on Account 465 (which it ultimately did).

Account 545 involved firewall services that AT&T provided to Putnam-Greene. Putnam-Greene contends that it had stopped using these services in November 2017 and attempted to close the account in May 2018. It then requested a refund of alleged overpayments, which AT&T denied because of amounts due under other accounts.

In this action, Putnam-Greene contends that AT&T's continued billing and temporary service termination constituted material breaches of the service agreement. Its amended complaint contains seven claims: (1) breach of contract; (2) conversion; (3) negligence; (4) money had and received; (5) unjust enrichment; (6) attorneys' fees; and (7) punitive

damages. Before the Court is AT&T's motion [15] to dismiss Putnam-Greene's amended complaint.

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

"probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.  Discussion

Initially, the parties dispute which state's law governs Putnam-Greene's contract-based claims (the claims for breach of contract, money had and received, and unjust enrichment). AT&T points to a 2017 service agreement that provides, "This Agreement will be governed by the law of the State of New York, without regard to its conflict of law principles, unless a regulatory agency with jurisdiction over the applicable Service applies a different law." [15-1] § 10.11. Under this agreement, New York law would govern the contract claims, but Georgia law (where the alleged injury occurred) would govern the tort claims. *See, e.g.*, *Ins. House, Inc. v. Ins. Data Processing, Inc.*, No. 1:07-cv-286-BBM, 2008 WL 11333547, at *6 (N.D. Ga. Nov. 19, 2008); *Mullins v. M.G.D. Graphics Sys. Grp.*, 867 F. Supp. 1578, 1580 (N.D. Ga. 1994).

Putnam-Greene contends that a 2014 agreement governs and requires application of Georgia law to all its claims.

Ultimately, although the parties brief many arguments with respect to dismissal, the voluntary payment doctrine is dispositive of all

5

claims. Because the result is the same under either state's voluntary payment doctrine, the Court need not determine which agreement (and which state's law) applies.

In New York, the doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, in the absence of fraud or mistake of material fact or law." *Beltway 7 & Props., Ltd. v. Blackrock Realty Advisers, Inc.*, 90 N.Y.S.3d 3, 6 (N.Y. App. Div. 2018) (quoting *DRMAK Realty LLC v. Progressive Credit Union*, 18 N.Y.S.3d 618, 621 (N.Y. App. Div. 2015)). Under New York law, the doctrine (the applicability of which is determined from the allegations in the complaint) requires that the Court dismiss contract claims if no fraud or mistake is alleged. *See Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1156 (N.Y. 2003).

Fraud requires that the plaintiff show that it actually relied on the purported fraudulent statements, and that the reliance was reasonable or justifiable. *Harris v. Camilleri*, 431 N.Y.S.2d 65, 68 (N.Y. App. Div. 1980).

Putnam-Greene does not allege that it relied on AT&T's representations that the accounts had outstanding balances or that it made payments under mistake of fact or law. Instead, it alleges that it repeatedly disputed the charges related to Account 465. Similarly, it continued making payments on Account 545 for several months although it had not used the services. It does not allege that it mistakenly believed it was required to do so or that AT&T fraudulently induced it into doing so. Therefore, to the extent New York law applies, its voluntary payment doctrine bars the contract claims.

Similarly, Georgia's voluntary payment doctrine bars the tort-based claims (and, if it applies to the contract-based claims, those as well). The codifying statute provides:

> Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property. Filing a protest at the time of payment does not change the rule prescribed in this Code section.

O.C.G.A. § 13-1-13.

Under Georgia law, Putnam-Greene bears the burden of showing that the doctrine does not apply. *Pew v. One Buckhead Loop Condo. Ass'n*, 700 S.E.2d 831, 835 (Ga. Ct. App. 2010). As in New York, justifiable reliance is an essential element of fraud. *Novare Grp. v. Sarif*, 718 S.E.2d 304, 309 (Ga. 2011).

Putnam-Greene alleges that its payment on Account 465 was made "under duress because AT&T created an urgent and immediate necessity." [12] ¶ 64.[1] However, pleading the words from the statute is not enough. Rather, Georgia law has explicated what falls within the context of an "urgent and immediate necessity."

Specifically, a payment is considered voluntary "unless the party making payment does so to prevent the immediate seizure of his goods or the arrest of his person." *Pew*, 700 S.E.2d at 835.

"Goods" are defined as "items for sale, or possessions that can be moved." Goods, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/goods (last visited

---

[1] Putnam-Greene has made no allegations of fraud or duress with respect to Account 545.

Apr. 16, 2020). The Oxford English Dictionary provides the following definition: "Things that are produced for sale; commodities and manufactured items to be bought and sold; merchandise, wares; (in Middle English) *spec.* crops; produce. Now also (*Economics*): economic assets which have a tangible, physical form (contrasted with *services*)." Goods, Oxford English Dictionary, https://www.oed.com/viewdictionaryentry/Entry/79925 (last visited Apr. 16, 2020). Services do not fall within that definition. In fact, the Oxford English Dictionary's definition explicitly contrasts goods and services. This distinction is likewise recognized under Georgia's Uniform Commercial Code, which applies to contracts involving goods but not those involving services. *See* O.C.G.A. § 11-2-101 et seq.

The parties have pointed the Court to no authority, and the Court has located none, expanding the definition of "goods" or what constitutes an "urgent and immediate necessity" for the purposes of Georgia's voluntary payment doctrine.[2]

---

[2] Putnam-Greene also has filed an affidavit [18-1] from its chief technical officer David McAfee in an attempt to demonstrate that its payment was made "under an urgent and immediate necessity" to protect and preserve the viability of

Although Putnam-Greene points to *Gulf Life Insurance Co. v. Folsom*, 349 S.E.2d 368, 370–71 (Ga. 1986), for an exception that it contends applies, the exception at issue in that case applies only where there is an allegation that the plaintiff made the payments under a mistake of fact. *Id.* at 373. Putnam-Greene has not alleged that it made payments to AT&T negligently or under a mistake of fact.

Therefore, under either New York or Georgia law, Putnam-Greene's claims against AT&T fail because they seek to recover a voluntary payment. The claims will therefore be dismissed.

## IV. Conclusion

For the foregoing reasons, AT&T's motion [15] to dismiss is granted. The Clerk is directed to close this case.

IT IS SO ORDERED this 20th day of April, 2020.

Timothy C. Batten, Sr.
United States District Judge

---

its operations. AT&T contends that the declaration is not properly considered on a motion to dismiss. However, even if the Court were to consider the declaration, it would not change the outcome for the reasons discussed above.